## Caldwell & Drake v. Pierce.

(Decided June 10, 1913.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1.  Finding of Chancellor—Evidence.—In an action by a sub-contractor against a contractor to recover balance due on several contracts, evidence examined and held to sustain the finding of the chancellor as to certain items.

2.  Contracts—Building—Plans and Specifications—Decision of Architect and Construction Board—Effect.—Where the specifications for a public building provide that "if any discrepancy appears in the plans and specifications, the same must be referred to the architect for correction. All differences or discrepances as to sizes and quality of materials and workmanship, the decision of the architect and the Court House Construction Board is to be final and binding on the contractor," the decision of the architect and the Court House Construction Board that certain marble and tile work furnished by a sub-contractor who agreed to do the work in accordance with the plans and specifications, were included within the specifications, and should not be allowed as extras, is binding on both the contractor and the sub-contractor in the absence of a showing of fraud or mistake.

EUGENE R. ATTKISSON for appellants.

GIFFORD & STEINFELD for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming on cross appeal and reversing on original appeal.

At the time of the institution of this action plaintiff, Fannie J. Pierce, trading and doing business as the Marbleithic Company, was engaged in manufacturing and installing marble and tile works. Defendants, George W. Caldwell and Leslie Drake, partners trading and doing business under the firm name of Caldwell & Drake, were general contractors engaged chiefly in the business of erecting public buildings. For many years prior to the institution of this action, defendants, when they took contracts for the erection of public buildings, would employ plaintiff as sub-contractor to do the marble and tile work. Among the sub-contractors which plaintiff had were those covering marble and tile work on buildings at Gallipolis, Ohio, Morgantown, West Virginia, Port Clinton, Ohio, New Martinsville, Greencastle, West Baden and Hammon, Indiana, and Parkersburg, West Virginia.

Plaintiff brought this action against defendants to recover certain balances alleged to be due on the Gallipolis, West Baden, Morgantown, New Martinsville and Greencastle contracts. The defendants admitted certain items in plaintiff's account, and denied others, and pleaded counterclaims growing out of the contracts at Hammon, Port Clinton and Parkersburg, and asked judgment over against plaintiff. By reply, plaintiff denied all balances alleged to be due defendants, and pleaded the five-year statute of limitations to the counterclaim growing out of the Port Clinton and Parkersburg contracts. During the progress of the action plaintiff was permitted to file an amended petition wherein she alleged that she had been under the belief that the Port Clinton and Parkersburg contracts were not in writing, and she, therefore, interposed the plea of limitation, but upon ascertaining that they were in writing she denied the defendants' counterclaim growing out of these transactions, and pleaded that there was a balance due her. The case was referred to the master commissioner to hear proof and report his findings. To his report on the Gallipolis, New Martinsville, Morgantown and Port Clinton contracts no exceptions were filed. As to the Greencastle, West Baden, Hammond and Parkersburg accounts, both plaintiffs and defendants filed exceptions. On final hearing, all the exceptions were over-

ruled, and the chancellor rendered judgment in favor of plaintiff in the sum of $1,391.43, with six percent interest thereon from March 16, 1912. From that judgment defendants appeal and plaintiff prosecutes a cross appeal.

The only items in dispute under the contract at West Baden are two checks for $60 each, payable to the order of the Marbleithic Company, one of which is endorsed "Marbleithic Company, by C. W. Cousins," and the other "Marbleithic Company, by Charles Brothers." Mr. Caldwell testified that these checks were given for labor and material furnished the Marbleithic Company in order to keep mechanic's liens from being filed. He thought that Cousins was an employee of the Marbleithic Company, but did not know who the Charles Brothers were who endorsed the other check. Mr. Pierce testified that neither Cousins nor the Charles Brothers were employees of the Marbleithic Company; that he knew of no such persons, and that no such persons had authority to receive money for the company or to endorse its checks. In view of this evidence, we see no reason to disturb the finding of the chancellor.

On the contract at Hammond, Indiana, defendants claim an overpayment of $66.34. It appears that this item was in dispute, and that defendants afterwards sent their check to plaintiff for $2,921.47 without deducting the $66.34. Pierce says that there was a settlement of the matter; Caldwell denies the settlement. The fact that the check for $2,921.47 was sent to plaintiff after the dispute arose tends to confirm Pierce's testimony, and we conclude that the commissioner and the chancellor properly rejected this item of defendants' counterclaim.

Under the Parkersburg contract it appears that plaintiff was to furnish the marble and tile work at so much per square foot. This work was completed several years before this suit was brought. Upon the completion of the work it was measured by defendants and a representative of plaintiff, and the amount fixed at $6,-671.70. The evidence for defendants is that they paid plaintiff this amount. Defendants now contend that the work done by plaintiff was defective, and that they and plaintiff''s representative agreed on the sum of $4,500 as being the amount due under the contract. They, therefore claim a balance in their favor equal to the difference between $4,500 and $6,671.70. The commissioner,

basing his conclusion on the statement of Mr. Drake to the effect that the amount of work done was $7,000, found that plaintiff had been paid the sum of $6,671.70, and that the balance due plaintiff was $328.30. After it developed that the contract for the work at Parkersburg was in writing, plaintiff, in company with another man, went to Parkersburg. They measured the work done, and fixed the amount due on the contract at $8,784.30. Plaintiff now claims the difference between the amount paid her and the above amount. Here, then, we have a case where plaintiff, several years after the work has been accepted and paid for, claims a balance due, while defendants claim an overpayment of about $2,000. It does not appear that prior to this action there was ever any dispute between plaintiff and defendant with reference to the amount and value of the work done at Parkersburg. The work was measured by defendants and the representative of plaintiff. It was measured and paid for on that basis. We think it much safer to rely on the amount and value of the work as fixed by the parties at that time, than as now fixed by them when each is seeking to go over the old contracts and to assert a claim and counterclaim against the other. We, therefore, conclude that the chancellor erred in holding that there was a balance due on the Parkersburg contract of $328.30.

We agree with the finding of the chancellor and commissioner on all the items in dispute at Greencastle, with the exception of the item for tile on the north porch and the item of $550 for marble wainscoting in the vestibule. It appears that plaintiff contracted to do the marble and tile work according to the plans and specifications. Mr. Pierce testifies that the tiling on the north porch and the marble wainscoting in the vestibule were not covered by the plans and specifications, but were extras and should be charged as extras. The evidence for the defendants is to the effect that the architect and Court House Construction Board decided that these items were covered by the plans and specifications and by the original contract, and declined to allow them as extras. The specifications provide: "If any discrepancy appears in the plans and specifications the same must be referred to the architect for correction. All differences and disagreements as to sizes and quality of materials and workmanship, the decision of the architect and the Court House Construction Board is to be final

and binding on the contractor." The evidence in this case leaves no doubt that there was a disagreement between defendants and the architect and the Court House Construction Board in regard to the items in question. There is no evidence to the contrary. Their decision was against the contractor. As the defendants obligated themselves to do the work in accordance with the plans and specifications, and as plaintiff obligated herself to do the marble and tile work upon the same terms, we conclude that the decision of the architect and the Court House Construction Board to the effect that the items in question were required by the specifications and the original contract, and should not be allowed as extras, is, in the absence of a showing of fraud or mistake, binding on defendants and plaintiff alike. Waite on Engineering and Architectural Jurisprudence, section 402; Kelly v. Public Schools of Muskegon, Mich., 68 N. W., 282; Cuthat v. Gaw, 15 Mich., 527; U. S. v. Ellis, (Ariz.), 14 Pac., 300; Porter v. Buckfield, 32 Me., 559; Texas, &c., Ry. Co. v. Rust, 19 Fed., 239; Duell v. McGraw (Sup.), 33 N. Y. Supp., 538; O'Connor & McCullough v. Henderson Bridge Co., 95 Ky., 633. We, therefore, conclude that the chancellor erred in giving judgment in favor of plaintiff for the items referred to.

Judgment on cross appeal affirmed. On the original appeal the judgment is reversed with directions to enter judgment in conformity with this opinion.