## Roberts, et al. v. Sandy Valley & Elkhorn Railway Company.

(Decided October 21, 1915.)

### Appeal from Pike Circuit Court.

1.  Railroads—Obstruction of Stream—Diversion of Water.—When a right of way is purchased by a railroad company, and on this right of way it builds its road, it is liable to the party from whom it purchases the right of way only for negligence in the construction or operation of the road.

2.  Appeal and Error—Trial—Maps and Diagrams Used on Trial Should be Brought to This Court.—When maps or diagrams are used in the trial by the witnesses to explain the situation they should be made a part of the record and brought to this court.

J. S. CLINE for appellants.

AUXIER, HARMAN & FRANCIS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellants, Roberts and his wife, brought this suit, to recover damages in the sum of one thousand dollars, against the appellee railway company, growing out of damages alleged to have been sustained to the lands of the appellants by the construction of the road-bed of the railway company. On a trial before a jury there was a verdict in favor of the appellants for fifty dollars, and, deeming this assessment of damages inadequate, they have appealed.

The petition charged that the railway company, in the construction of its line of road, placed on each side of Shelby Creek the piers of a bridge, and by the erection of these piers and embankments connecting therewith caused the channel of Shelby Creek to leave its natural bed and flow over and against the land of appellants, thereby washing away and otherwise injuring their land.

The answer was a traverse of the averments of the petition.

On the trial of this case the witnesses used a diagram in explaining to the court and the jury the course of the creek and the location of the bridge piers and the land over which the water, as alleged, was diverted. This diagram, which would be equally if not more useful to us than to the court and jury in describing the locality,

is not in the record, although we have time and again in other opinions requested counsel to make a part of the record in cases like this diagrams and maps used on the trial of the case. If, however, counsel see proper not to furnish us this material aid, they should not complain if the opinion does not describe accurately the situation.

As aptly illustrating the difficulty we labor under in getting at the facts of a case like this in the absence of the diagram used on the trial, we quote from the testimony of Roberts the following: Asked if he had a diagram of the premises, he said, yes, and then using the diagram before the jury, he said:

"Now right here is what we are talking about now. Here is Mr. Osborne's line running off there. That is a straight line. Here is the bend I spoke to you about. Here is the center line of the Sandy Valley & Elkhorn Railroad. This heavy line here is the fill. Here is where they put the water over on me on that corner there and cut the land and fence away. Then they come on down here to the old meadow bottom and they put a bridge in there. And when there was any water in the creek it divided there and part went around one side of the island and part on the other; and they filled it up there and put it all in one channel. The water here strikes an abutment on the right-hand side of the creek as you go down and shoots it across on the rye field bottom. Here on the dark line is the county road. It crosses the creek above my house, and right there that little square represents my house. Here is the county road going between my house and the coal house that I had, and here across the creek they made the fill in there and filled nearly one-third of the channel in the creek opposite my house and orchard."

All of the evidence of the witness along this line was made very plain to the jury and the court by the diagram on which he pointed out the various objects and places; but, in the absence of the diagram, it is impossible for us to get an accurate idea of the situation.

It, however, appears from the evidence that the strip of land which was washed away by the diversion of the water from the natural bed of the creek was about 140 feet long and 20 feet wide and that about 60 panels of fence was washed away. It also appears that the rail-

way was constructed on land purchased from the appellants.

Osborne, a witness for appellants, said that he thought it would take $50 to protect the ground against further overflow. Other witnesses place the cost of protecting the land against further overflows at from one to three hundred dollars.

In the instructions the court told the jury that in view of the fact that the railway company had purchased its right-of-way from the appellants, there could be no recovery in their behalf unless they believed from the evidence that in constructing the road it negligently diverted the water course of the creek in such a way as to cause the injury complained of. They were further instructed that if they found for the plaintiffs to say whether they awarded damages for temporary or permanent injury.

The appellants did not offer any instructions, and the jury in their verdict said that the damages assessed were for temporary injury.

It is complained that the court erred in refusing to permit the appellant to testify that the railway company, in the construction of this road, threw a large rock in the creek near the land of the appellant which diverted the water of the creek. Other witnesses, however, were permitted to say that they noticed large rocks that had been thrown in the bed of the creek, and we think this evidence cured whatever error there might have been in the refusal to let appellant answer the question indicated.

It is also contended that the verdict of the jury finding that the diversion of the water was caused by a temporary condition was erroneous. We do not think so, as several witnesses were asked what it would cost to protect the land against further overflow, and these witnesses gave evidence as to what, in their opinion, it would cost, the estimates varying from $50 to $200 and $300, and it also appears from the evidence of these witnesses that the condition that caused the damage could be easily remedied.

It is also urged that the court erred in instructing the jury that they could not find for the plaintiffs unless they believed that the road was negligently constructed and this negligent construction caused the overflow complained of. We think that when a right-of-way is purchased by a railway company, and on this right-of-way

it builds its line of road, it is only liable to the party from whom it purchased the right-of-way for negligence in the construction or operation of the road. Madisonville R. Co. v. Renfro, 127 S. W., 508.

The failure of the court to instruct the jury as to the measure of damages is also pointed out as an error, but a careful examination of the evidence satisfies us that the jury were fully authorized to find for a temporary injury; and while they might have assessed the damages in a larger sum than they did, the damages are not so inadequate as to justify us in reversing the case on this ground.

Wherefore, the judgment is affirmed.