## National Tool & Die Co., Inc., v. Wrege, Trustee.

March 26, 1948.

Rehearing denied May 28, 1948.

Harold R. Marquette and Hal. O. Williams for appellant.

Wilbur Fields for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

John L. Wrege, Trustee, the appellee, obtained judgment against National Tool and Die Company, Incorporated, the appellant, for $1418.24 as an amount said to be due under terms of a written contract between these parties. The company appeals.

Appellant's main contention on this appeal is, in general substance, that the judgment, which was by agreement rendered by the court without the intervention of a jury, must be reversed because appellee did not prove any valid cause of action arising out of a breach of this contract.

This was a contract of manufacturing and selling enterprise. The company was to produce and sell a quantity of articles in which Wrege and his unnamed trustor apparently owned certain proprietary rights. After a deduction of expenses incurred in the enterprise, the net profits or losses, whichever might emerge, were to be distributed equally between the parties. The

operations extended over a period of about 10½ weeks and produced a good profit. The company, during this litigation, paid into court the original Wrege investment plus what the company considered as one-half the net profits. But Wrege himself maintained that such payment must be increased by about $1418.24, the amount for which he obtained judgment.

The dispute between these parties arose over their divergent views on what should be the allowable expenses of this enterprise preliminary to the calculation of its net profits. The company's payment into court was the sum advised by Waldman, Petot and Company, certified public accountants, after complete audit of the entire enterprise. Wrege's own claim of amount payable was the sum advised by Humphrey Robinson and Company, certified public accountants, after what appears to have been the latter's audit of an audit.

The part of this contract furnishing the battleground for this dispute reads as follows:

"The Party of the First Part agrees to manufacture or cause to be manufactured said trestles at actual cost plus plant rental, if manufactured by the Party of the First Part, and administrative charges, to be allotted by a certified public accountant, to be agreed upon by the parties, and office rent not to exceed $25.00 per month. There shall not be included in the computation of actual costs any executive charge, or any profit, remuneration, rebate or discount of any description accruing directly or indirectly to the Party of the First Part. This provision shall be construed on the basis of strict accountability as of one partner to another."

The gist of the foregoing contractual provision is (a) that the expenses of this enterprise were, within the terms of the contract, to be "allotted by a certified public accountant, to be agreed upon by the parties" and (b) that this provision must be construed on a "basis of strict accountability." According to evidence produced by the company, there was a discussion between Wrege and the company relative to the acceptability of Woldman, Petot and Company as the certified public accountant to make the audit of this enterprise. Wrege raised no objection, according to the company's

evidence, against that accounting firm, and we have been unable to find anywhere in this record a denial of Wrege's passive acceptance of Waldman, Petot and Company as the certified public accountant for this job. There was no pleading or proof of any dishonesty or any incapacity on the part of Waldman, Petot and Company for any audit work in general or for this audit work in particular.

Waldman, Petot and Company's accountant testified on this trial in appellant's behalf and such testimony tended to support the propriety of every detail of the Waldman audit, which is itself part of the record of this case. But neither Humphrey Robinson and Company's accountant nor any other qualified accountant testified on this trial in appellee's behalf. While a copy of the Humphrey Robinson audit or "statement of operations" was filed with appellee's petition, yet we did not find therein any attack against Waldman, Petot and Company or its audit based on any fraud or mistake. The Humphrey Robinson document does not say that the Waldman document is either fraudulent or erroneous. It, perhaps referring to the Waldman document, simply says "we have eliminated from the statement of operations previously submitted" certain specified items of expenses incurred in the enterprise. Since no qualified auditor testified for appellee and since the Humphrey Robinson document neither named the Waldman document nor attacked it with the weapon of specified fraud or particularized error by calling them such, we are unable to find the necessary probative support for Wrege's side of this case.

This court has held that where a contract provides for a settlement of disputed items, arising under such contract, by means of a determination through an outside authority, the subsequent determination by such authority upon the questionable items is, in the absence of a showing of fraud or mistake, binding upon the parties to the contract. See Caldwell & Drake v. Pierce, 154 Ky. 328, 157 S. W. 692.

It may be possible, in the instant case, for Wrege to prove by competent evidence of some qualified accountant that the firm of Waldman, Petot and Company, the accepted arbiter of the disputed items of this

enterprise, has defrauded him or has erred against him to his detriment. However, we think this has not been done up to the present time. If done in the future, it will have to be accomplished by the time honored method of calling a spade a spade rather than by a mere documentary observation that "we have eliminated" certain items from some unidentified previous "statement of operations." This case presented a problem of accounting, pure and simple. Therefore, it was necessary, we believe, that appellee produce some clear, strong, unveiled accounting testimony in support of his theories. This he failed to do. The result was a judgment built on the quicksand of insufficient evidence rather than on that rock of ample proof against which the storms of reversal do not prevail.

Wherefore, for the reason recited, the judgment is hereby reversed for further proceedings consistent herewith.