**GREEN RIVER STEEL CORPORATION,**
Appellant,

v.

**GLOBE ERECTION COMPANY, Inc.,**
Appellee.

Court of Appeals of Kentucky.

June 15, 1956.

Rehearing Denied Nov. 16, 1956.

508

Hensley & Logan, Frank A. Logan, Louisville, for appellant.

Carl K. Helman, Louisville, for appellee.

HOGG, Judge.

This action was brought by appellee, Globe Erection Company, Inc., seeking damages which were alleged to be due as a result of the construction of a steel mill pursuant to a contract entered into by Globe Erection Company of Louisville, Kentucky, and appellant, Green River Steel Corporation of Owensboro, Kentucky. The contract provided that Globe Erection Company was to perform labor and furnish materials and machinery, as of September 22, 1952, that was contemplated and remained to be done in the contruction of a new steel mill near Owensboro for Green River Steel Corporation, which was to pay all costs incurred in the work by Globe Erection Company, plus a fixed fee of $40,000. Globe Erection Company sought to recover $38,919.86 for money alleged to be due under the terms of the contract, and $20,000 damages alleged to be due for additional time spent during the construction, because of errors and mistakes in the drawings and specifications furnished by Green River Steel Corporation. The jury awarded Globe Erection Company the sum of $58,835.61 and judgment was entered accordingly.

Green River Steel Corporation appeals, contending first, that proper venue of the action was not in Jefferson County where the action was instituted. Under the provisions of KRS 452.450, where a corporation has an office or place of business in the state, or a chief officer or agent residing in this state, an action based on contract may be brought against it in the county in which it has an office or place of business, or in a county in which its chief officer or agent resides, or in the county in which the contract is made, or in the county in which the contract is to be performed. See Job Iron & Steel Co. v. Clark, 150 Ky. 246, 150 S.W. 367. It is uncontradicted that the appellant was incorporated under the laws of Kentucky, with its chief officer or agent residing in Owensboro, Daviess County, Kentucky; that its contract with appellee was to be performed in Daviess County; and that its office or place of business was in Daviess County. The only remaining basis upon which it may be said proper venue of the

action lay in Jefferson County is that the contract was made there. The appellant takes the position that the contract was made in Washington, D. C., where it was approved by the Reconstruction Finance Corporation on October 30, 1952.

The final contract was signed in Louisville on October 22, 1952, by the construction manager of Ebasco Services, Inc., agent for Green River Steel Corporation, and by the president of Globe Iron Works and Globe Erection Company. Ebasco Services' employment was terminated by Green River Steel Corporation and Globe Iron Works assigned their portion of their contract and thus are not now parties to this action. The signatures of the president and chairman of the board of directors of the Green River Steel Corporation were also on the contract. However, the contract expressly provided that it did "not become binding until approved by the Reconstruction Finance Corporation." This contract was sent to Washington, D. C., and was there approved by Mr. Repass, engineer of the Reconstruction Finance Corporation on October 30, 1952. On November 4, 1952, it was also approved in Jefferson County by R. B. Bottomley, manager of the Louisville branch of the Reconstruction Finance Corporation.

■ The Restatement of the Law of Contracts, Section 74, provides: "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done." See also Gannon v. Bronston, 246 Ky. 612, 55 S.W.2d 358, 86 A.L.R. 324; Trinity Universal Ins. Co. v. Mills, 293 Ky. 463, 169 S.W. 2d 311. The general rule is that where an agreement is made, subject to the consent or approval of a third person, it must be looked on as a conditional agreement, dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have become effective. Southern Coal & Coke Co. v. Bowling Green Coal Co., 161 Ky. 477, 170 S.W. 1185; Lilly v. Haynes Co-op. Coal Mining Co., 50 N.D. 465, 196 N.W. 556; 17 C.J.S., Contracts, § 43, p. 384.

510

■ The express terms of the contract provided that the contract would not be "binding until approved by Reconstruction Finance Corporation," whose loan of money to Green River Steel Corporation was essential to the construction. It is manifest that the condition of the approval of the Finance Corporation was inserted in the contract because the parties thought such approval was essential to its validity. The formation of the contract was dependent upon the approval of the Finance Corporation. However, the approval by its home office in Louisville, not in Washington, was the final act necessary for its formation, and the contract was there made. The action was properly brought in Jefferson County.

■ The second contention appellant raises is that the court erred in overruling appellant's motion for a directed verdict, made at the conclusion of the appellee's evidence and renewed at the conclusion of all the evidence as to three claims, which were as follows: (1) The claim of $20,000 in damages for additional time spent on the construction job due to errors and mistakes in the drawings and specifications furnished by appellant, causing appellee to do over much of the work; (2) the claim of $7,799.02 for work done beyond the scope of the terms of the contract; and (3) the claims of $1,030.65, $1,578.60 and $736.29 for repairs to items of machinery.

The principal reason given by appellant to support its contention that the court should have directed a verdict in its favor as to the appellee's claim for damages for additional time spent on the job is that the proof of the amount of damages sustained was inadequate. The evidence sufficiently established that drawings were furnished to appellee by architects employed by appellant, and, after work was done according to them, it was discovered that the building was being done wrong. The construction was then torn out and delay resulted from waiting for new plans with which the work could be done correctly and from attempting to decide on a correct way to construct parts of the mill. Evidence pertaining to the damages consisted primarily of the testimony of

Mr. Fulkerson, president of appellee. He testified that although it should have taken five to six months to complete the work appellee was to do under the terms of the contract, it actually took eleven months because of the erroneous plans and drawings furnished by appellant. He estimated that appellee was compelled to do over at least twice approximately sixty per cent of the total work. This evidence was substantiated by the testimony of William Katz, office manager and cost accountant of appellee, and Thomas S. Moore, general superintendent of construction of appellee. Fulkerson explained in detail about fifteen instances where Globe had to do work over, and Katz and Moore pointed out several instances also. Fulkerson said that, as well as he could determine, the value of the additional length of time spent on the job was $20,000, the amount of damages asked by appellee. It is the view of the majority of the court, but not of the author of this opinion, that this evidence was sufficient to authorize the submission of the claim to the jury for its determination.

■ Appellant also complains that the instruction relating to the claim for damages for additional time spent is defective in that it fails to set a standard by which to measure the damages, if any. In effect the court told the jury they should find for the plaintiff the value of the additional services performed, not to exceed $20,000. We find there is no substantial error in the instruction.

The appellant urges that the court erred in failing to direct a verdict in its favor as to the claim for $7,799.02 for extra work done beyond the scope of the terms of the contract, because the engineer's decision that none of the work in question was extra, was controlling. Fulkerson testified at length concerning the specific items of work which were done, and gave the cost of doing the work. Fulkerson and Moore testified that this work was outside the terms of the contract. The evidence further showed that appellee had informed appellant of the items of work done and asked it several times to meet and discuss payment for the

work. On one occasion Fulkerson went to Louisville to talk to a member of the board of directors of appellant concerning the extra work. Appellant at all times refused to come to terms of settlement. Letters concerning the claim were written to representatives of appellant, including its construction engineer, Mr. Wilson, but no reply was ever made. Wilson testified at the trial that in his opinion the work done by appellee was work to be done under the terms of the contract, and it is this decision, given for the first time as a witness, that appellant contends is controlling and binding as to whether appellee did or did not do extra work.

■ It is the general rule that the decision of the architect or engineer as to what does or does not constitute extra work, where the contract, as it does here, provides that his decision shall be final and binding, is conclusive and controlling on both the owner and the builder, unless he acts arbitrarily, dishonestly, or under a demonstrable mistake of fact. 17 C.J.S., Contracts, § 371, p. 853. See also Caldwell & Drake v. Pierce, 154 Ky. 328, 157 S.W. 692; McMahon & Co. v. Casement & Co., 13 Ky. Law Rep. 429. However, where the parties to the contract proceed throughout the performance of the contract without reference to the provisions in the contract, they may be held to have waived the provision for some one to decide what is extra work. Meyer v. Berlandi, 53 Minn. 59, 54 N.W. 937; 17 C.J.S., Contracts, § 371, p. 853. Or where a contract makes the engineer's or architect's certificate conclusive on the parties, but one is not given by him before trial, his testimony as a witness will not be conclusive but will be received like the testimony of any other witness with equal knowledge and opportunity. Boteler v. Roy, 40 Mo.App. 234, 235; 54 A.L.R. 1266.

■ During appellee's attempted settlements, the appellant did not recognize the engineer as having the power to bind the parties as to what constituted extra work. The appellant's engineer himself did not reply to appellee's letter concerning the alleged extra work. Therefore, the engineer's

decision given for the first time as a witness at trial was not conclusive, but was received to be considered by the jury on the same basis as the testimony of the other qualified witnesses. The jury was rightfully given the opportunity to find whether or not the appellee had actually done extra work.

■ The third part of appellant's contention, that the court below should have directed a verdict in appellant's favor, relates to appellee's claim for repairs made to equipment leased to appellant. The equipment was leased to appellant by appellee under a lease which provided appellant was to pay operating and maintenance expense of the equipment and to return the equipment to appellee in as good condition as when received, natural wear and tear excepted. Appellee used the equipment it had leased to appellant during the construction of the mill. Appellee claimed that as a result of unnatural wear and tear a 5–G Allis Chalmers Highlift, a Model L 210 International Truck and a T L J 25 Crane had been damaged during the work and that the amounts of money spent by appellee for repairs thereto were due from appellant. The jury retuned a verdict for appellee for $1,030.65 as to the Highlift, for $1,578.60 as to the Crane, and for $736.29 as to the Truck, and judgment was entered thereon.

Fulkerson testified that the Highlift was in first-class condition when it was brought on the construction job, and when it was taken to be repaired, it was in a damaged condition due to sand which had gotten in it during the work. It was his opinion that the wear and tear of the machine in the sandy soil where the mill was being built was not normal; that is, sandy soil was an abnormal working condition. Lawson B. Benge, service manager for Williams Tractor Company, repaired the Highlift before it was taken to the construction site, and he testified it was in "A–1" condition after being repaired at that time. He repaired the machine again after it had been used in the construction of the mill, and he stated that in his opinion the damaged condition of the machine was not due to normal wear and tear. He named the damaged parts of the

machine, and gave the cost of the repairs. The evidence of the condition and repairs of the crane consisted of the testimony of Fulkerson. He testified that when it was brought on the job, it had been completely overhauled. He inspected it and found it to be in good mechanical condition. While it was being used in the construction of the steel mill, sand got in its parts and caused many of them to be replaced. He produced an itemized statement of the repairs. It was used on the job from December of 1952 to June of 1953, when the repairs were made, and the normal life of a crane of this type is approximately three years. Fulkerson testified that when the truck was brought on the job, it had been used about five hundred miles, and it was practically a new truck. The truck was used for hauling various materials in places where no roads were, and at times it would have to travel in dirt up to its axle, causing damage to the under side of it from dragging and from sand getting into its parts. When it was taken from the job, it was still in good condition, but needed several repairs, which were not due to use in normal working conditions. Charles R. Parker, assistant foreman of International Harvester Company, testified that he made an inspection of the truck in order to make an estimate of the repairs needed, and in his opinion the condition of the truck was not due to natural wear and tear. Moore, appellee's general superintendent of construction, testified that the equipment was cared for as well as possible while it was being used on the job. There were a mechanical superintendent or foreman and two other men who worked continuously for appellee maintaining equipment. Appellant presented practically no evidence to rebut the appellee's proof that the repairs to the equipment were not due to natural wear and tear. Three witnesses, Wilson, the construction engineer; Hammond, the general superintendent; and Roy H. Cooper, construction equipment worker, testified that they saw nothing abnormal about the soil where the equipment was used.

The conclusion is reached that there was sufficient evidence to sustain the lower court's submitting to the jury the questions of whether the repairs to the equipment, after being used in the construction of the steel mill, were made in order to put the equipment in as good condition as when placed on the job, and whether the condition of the equipment before repairs was or was not due to natural wear and tear.

The final contention that appellant makes is that the court committed a prejudicial error when it refused to admit into evidence photographs of the construction site to show that appellee had not fully completed the work provided in the contract. Photographs introduced by appellant of various portions of the construction, installation, and erection taken about the time that the contract was terminated by appellant in July of 1953 were admitted into evidence by the trial court. A second group of photographs taken in March of 1954 of the same scenes, allegedly showing them as they appeared when they were completely constructed and installed in accordance with the terms of the contract, was offered for admission but the court ruled them inadmissible as too remote in time.

We are inclined to agree with the ruling of the trial court, but, even if it had been in error, the appellant was not prejudiced, for other evidence by the testimony of witnesses was admitted to establish the same fact for which the photographs were introduced. Carson v. Singleton, 23 Ky. Law Rep. 1626, 65 S.W. 821; Roberts v. Sandy Valley & Elkhorn Ry. Co., 166 Ky. 342, 179 S.W. 228.

Other questions raised have been considered and also found to be without merit.

The judgment is affirmed.