Curtis L. HOPKINS, Appellant,

v.

PERFORMANCE TIRE & AUTO SERVICE CENTER, INC.; Tony Conley; Jack McGhee; and Robin R. McGhee, Appellees.

No. 92–CA–1753–MR.

Court of Appeals of Kentucky.

Dec. 10, 1993.

Kenneth H. Gilliam, Michael D. Pratt, Hamm, Milby & Ridings, London, for appellant.

J. Robert Stansbury, Stansbury & Zoellers, London, for appellees.

Before JOHNSON, JOHNSTONE and MILLER, JJ.

*OPINION*

MILLER, Judge:

Curtis L. Hopkins brings this appeal from a judgment of the Laurel Circuit Court entered May 8, 1992, pursuant to a jury verdict. We reverse and remand.

On November 14, 1990, Hopkins entered into a sales/purchase agreement with Tony Conley, Jack McGhee, and Robin R. McGhee (purchasers) whereby Hopkins was to transfer 100 shares—being the total capital stock—of Performance Tire & Auto Service Center, Inc. (Performance Tire), to purchasers for the sum of $78,000.00. Prior to endorsement of the agreement, Hopkins compiled and delivered to purchasers a document containing a list of Performance Tire's accounts payable. The document evidenced that the corporation owed Goodyear Tire and Rubber Company (Goodyear) $67,967.94. The sales/purchase agreement provided:

> In consideration of the sale by the Vendor to the Purchaser, said Purchaser hereby agrees to execute a Promissory Note to Curtis L. Hopkins in the amount of Seventy-Eight Thousand Dollars ($78,000.00), to be payable with no interest at the rate of Seven Hundred Fifty Dollars ($750.00) per week for one hundred four (104) weeks, beginning with the week of *approval of Purchaser by the Goodyear Tire and Rubber Company* as dealers for Goodyear tires and accessories, *further upon obtaining*

*written approval from John Bill Keck, the Lessor* of the subject premises upon which the Vendor operate, authorizing the Purchaser to lease the property subject to the same terms and conditions as the Vendor currently leases the property. (Emphasis added.)

From the foregoing, it is apparent that the payment of consideration—and thus, the formation of the contract—was contingent upon the approval of both Goodyear and John Bill Keck, Performance Tire's lessor. Pursuant to the contract, on November 20, 1990, Hopkins and purchasers sought approval from Goodyear at its offices in Cincinnati, Ohio, at which time purchasers learned that the amount owed to Goodyear by Performance Tire was approximately $108,000.00—not $67,967.94, as originally stated by Hopkins/seller. Nevertheless, Hopkins and purchasers proceeded to obtain Goodyear's approval for the sale of Performance Tire.

Some five months later, on May 24, 1991, purchasers filed a complaint in the Laurel Circuit Court claiming that Hopkins "knowingly, intentionally, and fraudulently misrepresented the accounts payable figures." Hopkins moved for summary judgment, claiming that purchasers, through their actions, waived their rights to either rescind the contract or seek damages. The circuit court subsequently entered an order denying Hopkins's motion for summary judgment, reasoning as follows:

It does not seem equitable however that one can misrepresent the amount of an indebtedness owed by a business he is selling and avoid *any* consequence of such misrepresentation because the buyer chooses to proceed after knowledge of the true amount.

There may be U.C.C. or other remedies. Ultimately, the case was tried by jury. On May 8, 1992, the circuit court entered judgment pursuant to the verdict awarding $40,554.03 to purchasers, thus precipitating this appeal.

Hopkins contends there was no material issue of fact and that he was entitled to judgment as a matter of law. CR 56. The record is clear that purchasers endorsed the sales/purchase agreement without knowledge of Hopkins's misrepresentation of the accounts payable, but soon learned of this misrepresentation at a meeting with Goodyear only six days after signing the agreement. The record also indicates that in spite of this knowledge, purchasers continued to obtain Goodyear's approval for the purchase and, thereafter, entered into possession of the lessor's premises and assumed operation of the business in full performance of the contract. Hopkins contends that purchasers' conduct in seeking Goodyear's approval and their affirmance and continued performance under the contract after discovering the misrepresentation effectively waived any remedy for fraudulent representation.

In *Dunn v. Tate*, Ky., 268 S.W.2d 925 (1954), the purchasers of a dwelling house sued the vendor based upon the fraudulent representation that the house was "watertight." After discovering leaks in the house, the purchasers completed their contractual obligations by executing notes for a deferred portion of the purchase price, making payments on an assumed mortgage loan, and occupying the house for two years. In deciding the case, the Court was faced with evaluating the purchaser's conduct in failing to act promptly upon learning of the defect. Absent unusual circumstance, the Court conceived "the correct rule to be that failure of the defrauded party to act promptly will result in the loss of the right to rescind, leaving only the right to sue for damages." *Id.* at 928. The Court reasoned that failure of a defrauded party to act promptly upon learning of fraud is essentially an election not to pursue rescission as a remedy, but to seek damages only. The Court recognized that "an affirmance of the contract is not a waiver of the right to recover damages for the fraud, *particularly where the contract is executed."* (Emphasis added.) *Id.,* citing 24 Am.Jur. *Fraud and Deceit* § 213 (1939).

▐ We are of the opinion that where a fraudulent representation is discovered after a contract is executed, affirmance or continued performance waives only the defrauded party's right to rescind the contract—not the right to sue for damages based upon fraud. We emphasize that this rule applies only if

the knowledge of fraud was obtained after the contract was executed. However, if the fraudulent representation is discerned while the contract is *executory* and before either party has substantially performed in conformance with the terms of the contract, we deem the appropriate rule to be that affirmance or continued performance by the defrauded party under the contract also effectively waives the right to sue for damages. 37 Am.Jur.2d *Fraud and Deceit* § 394 (1968). The rationale supporting the rule appears to be that "the fraud is really consummated and the damages incurred by such performance, and that to permit a recovery thereafter would virtually be to allow a recovery for self-inflicted injuries and to permit the complaining party to speculate upon the other's fraud." *Id.* We are of the opinion, however, that the rule should not apply if recision of the executory contract by the defrauded party would result in damages clearly in excess of those generated by continued performance. Therefore, where unique circumstances prevail and recision of the executory contract will result in a proliferation of damages, the general rule is not applicable, and continued performance by the defrauded party will not effect a waiver of that party's right to sue for damages.

In the case *sub judice*, the initial determination is whether discovery of the fraudulent representation as to the amount owed to Goodyear occurred while the contract was still *executory* and substantially unperformed, or after it was *executed.*

■ In *Black's Law Dictionary*, an "executory contract" is defined as "[t]hat which is yet to be executed or performed; that which remains to be carried into operation or effect; incomplete; **depending upon a future performance or event.** The opposite of executed." (Emphasis added.) In *Green River Steel Corp. v. Globe Erection Company*, Ky., 294 S.W.2d 507 (1956), the Court was faced with determining when a contract executed by the parties, but specifically pending approval by a financing agency of one of the parties, became final and binding. It was held that the contract was not formed until the anticipated financing was obtained. In the course of the opinion, the Court stated:

The general rule is that where an agreement is made, subject to the consent or approval of a third person, it must be looked on as a conditional agreement, dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have become effective. [Citations omitted.] . . . . It is manifest that the condition of the approval of the Finance Corporation was inserted in the contract because the parties thought such approval was essential to its validity. *The formation of the contract was dependent upon the approval of the Finance Corporation.* However, the approval by its home office in Louisville, not in Washington, was the final act necessary for its formation, and the contract was there made. (Emphasis added.)

*Id.* at 510. In *Edwards v. Inman*, Ky.App., 566 S.W.2d 809 (1978), it was held that a real estate purchase contract conditioned upon bank financing by the purchaser was never a completed contract when bank financing failed, thus entitling the purchaser to return of his down payment on the realty. We think it logical and reasonable to conclude that a contract containing a condition precedent may, under ordinary circumstances, be considered executory in nature, during which time a party learning of fraud and continuing to perform risks loss of all remedies.

■ In the case at hand, the parties intended Goodyear's approval to operate as a condition precedent. It is evident that Hopkins and purchasers together understood that Performance Tire would not be conveyed without Goodyear's consent. Goodyear's approval operating to validate the contract was "the final act necessary for its formation" and, thus, constituted a condition precedent. *See Green River Steel*, 294 S.W.2d at 510.

■ It is undisputed that purchasers first obtained knowledge of the fraudulent representation of the accounts payable prior to Goodyear's consent—before realization of the condition precedent. After learning of this misrepresentation, a discussion between the parties ensued at the Goodyear offices. No effort was made to re-cast the agreement taking into consideration the discovered in-

crease in the accounts payable. Hopkins and purchasers continued to seek Goodyear's approval for the sale of Performance Tire. Purchasers took control of Performance Tire and continued to operate same for five months before filing this current action in the Laurel Circuit Court.

Simply stated, purchasers first obtained knowledge of the misrepresentation as to the amount of the accounts payable during the executory period of the contract and before either party had substantially performed. Nevertheless, purchasers elected to affirm and continued to perform under the contract. Undoubtedly, purchasers' continued performance of the executory contract after initially learning of the fraud spawned the damages claimed. Under the circumstances, we must conclude that purchasers' conduct after obtaining knowledge of the misrepresentation during the executory stage operated as a waiver of the right to sue for damages, as well as the right to rescind the sales/purchase agreement.

After review of the record and applicable law, we are of the opinion that no material issues of fact existed and that Hopkins was entitled to judgment as a matter of law. CR 56. The trial court committed reversible error in denying Hopkins's motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.