NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0751n.06

Nos. 12-6178/12-6255

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 13, 2013
DEBORAH S. HUNT, Clerk

DOUGLAS P. SUMNER,

    Plaintiff-Appellee - Cross-Appellant,

v.

ARMSTRONG COAL COMPANY, INC.,

    Defendant-Appellant - Cross Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE:  ROGERS, WHITE, and ALARCÓN[*], Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Plaintiff Douglas Sumner (Sumner) brought this

action against Defendant Armstrong Coal Company, Inc. (Armstrong), alleging that Armstrong owes

him commissions under several contracts entered into between 2006 and 2010.  The district court

granted summary judgment to Sumner for commissions under two contracts, and sua sponte

dismissed Sumner's claim for commissions under an additional contract.  The parties cross-appealed.

We REVERSE and REMAND the sua sponte grant of summary judgment against Sumner and

AFFIRM the grant of summary judgment to Sumner.

**I.**

Armstrong was formed in 2006 for the purpose of acquiring and developing coal reserves in

Western Kentucky to sell the coal to end-users, such as utility companies.  Shortly after Armstrong's

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

inception, it entered into a letter agreement with Sumner to provide consulting services and negotiate contracts on behalf of Armstrong with Louisville Gas and Electric Corporation (LG&E), a potential end-user. The agreement promised to pay Sumner $0.35 cents per ton of coal sold to LG&E for any contract entered into prior to December 31, 2007, and gave Sumner "the exclusive right to negotiate a contract with LG&E."

On April 7, 2007, Armstrong and Sumner executed a consulting agreement that formalized their letter agreement, providing Sumner with the same rate of compensation and extending the term until December 31, 2009. The consulting agreement gave Sumner exclusive rights to negotiate with LG&E and an additional potential end-user, Big Rivers Electric Corporation, but provided that Armstrong is responsible for the final acceptance of any contracts Sumner negotiates. It also states that Sumner will be entitled to commissions on coal shipped under long-term contracts executed during the term of the consulting agreement, even if the shipments extend beyond the end of the term. The parties later amended the consulting agreement to clarify that Sumner is not entitled to compensation for contracts, purchase orders, or "spot market" sales that last for a term of less than one year.

In December 2007, Sumner assisted Armstrong in negotiating a contract with LG&E in which Armstrong agreed to provide LG&E with 27.1 million tons of coal through 2015. This contract—known as Contract No. J07032—became effective January 1, 2008. In November 2008, Armstrong and LG&E amended J07032 to reduce the amount of coal provided between 2008 and 2012. Beginning in late 2008, Armstrong began paying Sumner commissions on J07032 pursuant to the consulting agreement.

On December 22, 2009, Armstrong and LG&E again reduced the total volume of coal to be supplied under J07032. On the same day, Armstrong entered into two new contracts with LG&E—Contract Nos. J10007 and J10009. J10007 provided for the sale of 600,000 tons of coal from January 1, 2010 through December 31, 2010. J10009 provides for the sale of six million tons of coal from 2011 through 2016, but lists the "commencement date" of the contract as dependent on when Armstrong obtains permits for certain coal mines. It is undisputed that Sumner did not participate in the contract negotiations for J10007 or J10009 or the amendments to J07032. The consulting agreement between Armstrong and Sumner expired on midnight on December 31, 2009.

In May 2011, Sumner notified Armstrong that he believed he was entitled to commissions for coal shipped under J10007 and J10009. Armstrong refused and Sumner filed suit, alleging that Armstrong breached the consulting agreement and its implied duty of good faith and fair dealing by excluding him from contract negotiations and refusing to provide him with commissions for coal shipped under J10009 and J10007. Armstrong filed an answer and counterclaim on October 3, 2011, asserting various affirmative defenses—all of which the district court dismissed—and counterclaiming that Sumner had engaged in fraudulent inducement and unjust enrichment and had breached his fiduciary duties.

Prior to discovery, Sumner filed a motion for partial summary judgment on liability, seeking a determination that Armstrong breached its commission agreement with Sumner and its implied duty of good faith and fair dealing. Armstrong did not file a cross-motion. The district court granted Sumner's motion in part, holding Armstrong liable for commissions under J07032, as amended, and

J10009. However, the district court denied Sumner's claim for compensation under J10007 and dismissed the claim sua sponte.

Both parties timely appealed. Armstrong contests the court's determination in regard to J10009.[1] Sumner contests both the procedure and the substance of the court's decision in regard to J10007.

**II.**

We review de novo a district court's grant of summary judgment. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing the record, we view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citations omitted).

**A.**

First, we consider Armstrong's appeal of the district court's grant of summary judgment to Sumner for commissions under J10009. The consulting agreement provides for Sumner's compensation as follows: "In consideration of Sumner's services set forth in Section 1 of this Agreement, Armstrong shall pay Sumner thirty-five cents ($ .35) per ton of coal shipped under all LG&E and Big River contracts executed by Armstrong during the Term[, *i.e.* through December 31, 2009]." Section 3(b) of the consulting agreement clarifies that, "[i]n the event that Armstrong has

---

[1]Armstrong waived its arguments with regard to commissions under J07032 on appeal.

executed a LG&E or Big River Contract prior to the expiration of the Term, which contract term

extends beyon[d] the Term of this Agreement (a 'Long Term Contract'), Sumner shall be entitled

to payment on the Long Term Contract after the expiration of the Term." The question is whether

J10009 was a "contract" "executed" within the term of the consulting agreement.

J10009 set a "commencement date" based on when Armstrong was granted mining permits

for certain mines. J10009 states:

> Notwithstanding any provision to the contrary herein, it shall be a condition precedent (but shall be the only condition precedent) to the parties' obligations, duties and rights hereunder, as well as to the enforceability of this Agreement, that the Mine Permit Date shall have occurred on or before October 1, 2012. Upon the mutual written agreement of the parties, such condition precedent may be waived. Should such condition precedent not be met or waived by the aforementioned date, this Agreement shall be deemed null and void and unenforceable ab initio, and neither party shall have any liability to the other related to or arising from this Agreement.

It is undisputed that representatives from Armstrong and LG&E signed J10009 on December 22,

2009, within the term of the consulting agreement.

The district court granted summary judgment in favor of Sumner, rejecting Armstrong's

argument that no contract existed prior to Armstrong's obtaining the permits.[2] The court held that

although J10009 was not enforceable until a later date, "the entire scope of the contractual

relationship was defined and executed on December 22, 2009," ten days before the expiration of

Sumner's contract with Armstrong, and "did not merely indicate an intent to contract at a later date,

---

[2]The district court also rejected Armstrong's contention that Sumner was not entitled to commissions under J10009 because he had no involvement in its negotiation—a determination that Armstrong does not contest on appeal.

but rather was itself the entire contract." Because the court determined that "the clear import of the Consulting Agreement was to provide Sumner compensation based on agreements reached between Armstrong Coal and LG&E from 2006 to 2009," it concluded that, to the extent coal was later shipped under J10009, Armstrong owed Sumner commissions.

Armstrong renews its argument on appeal that J10009 was not "formed" until late 2010, when it obtained the mining permits. We disagree. Although Armstrong's obligation under J10009 became *effective* when it received permits, the contract's *execution* date was December 22, 2009. (*See* R. 22-8 (noting that "[t]he term of this Agreement shall commence (and this Agreement shall become effective), if at all, on the Commencement Date" and linking the "Commencement Date" to receipt of the mining permits).) This understanding is supported by the contract's language, which states on the signature page: "the parties hereto have caused this Agreement to be executed as of the date first above written." Similarly, the affidavit submitted by Armstrong from its president, Martin Wilson, states: "On December 22, 2009, Armstrong and LG&E executed two coal supply contracts—a long terms contract (No. J10009) and a short-term contract (No. J10007)." Under the consulting agreement, the execution date of a contract, not the effective or commencement date, controls the determination whether Armstrong is obligated to pay Sumner commissions.

Armstrong's argument that acquisition of the mining permits was not a condition precedent to the *performance* of the contract, but rather the *formation* of the contract, is likewise unpersuasive. Armstrong's argument relies on language from a New York case, *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon, & Co.*, 86 N.Y.2d 685 (N.Y. 1995); however, Armstrong is unable to identify any similar distinction within Kentucky jurisprudence. "[U]nder Kentucky law, if a

contractual condition precedent is not satisfied, then the contract is not *enforceable*." *Legacy Dev. Corp. v. Hous. Auth. of Louisville*, No. 2006-CA-000314-MR, 2006 WL 3691198, at *2 (Ky. Ct. App. Dec. 15, 2006) (emphasis added); *Myatt v. Myatt*, No. 2004-CA-000516-MR, 2004 WL 2634172, at *4 (Ky. Ct. App. Nov. 19, 2004); *see also In re Big Rivers Electric Corp.*, 233 B.R. 726, 734 (Bankr. W.D. Ky. 1998). Again, the relevant inquiry under the consulting agreement is not when a contract becomes enforceable, but rather whether a contract was executed. Had Armstrong received the permits the day after executing J10009, it would have been obligated to fulfill the contract; had Armstrong failed to obtain the permits, it would have had no obligation to provide coal under the contract, and in turn no obligation to compensate Sumner. The existence or absence of the obligation finds its source in the executed contract. As the district court stated, "Sumner's right to a commission on Contract No. J10009 must rise and fall with its contingencies: if Armstrong Coal received the permits, then LG&E was contractually bound to purchase the coal and Sumner earns his commissions when and if Armstrong Coal delivers and receives payment."

Armstrong also relies on *Green River Steel Corp. v. Globe Erection Co.*, 294 S.W.2d 507 (Ky. 1956), and *Hopkins v. Performance Tire & Auto Serv. Ctr., Inc.*, 866 S.W.2d 438 (Ky. Ct. App. 1993) to argue that until Armstrong received the permits, no contract existed. Both cases are distinguishable. In *Green River* and *Hopkins*, the agreements themselves were subject to third-party ratification. *See Green River*, 294 S.W.2d at 510; *Hopkins*, 866 S.W.2d at 441. Here, the contract was formed and the condition precedent for performance was third-party approval of *mining permits*, separate and apart from the contract itself. J10009 was executed, with all of the terms approved by

the parties involved, during the term of the consulting agreement. Accordingly, we affirm the district court's grant of summary judgment in Sumner's favor on J10009.

**B.**

Next, we consider whether the district court improperly granted summary judgment to Armstrong on Sumner's breach of good faith and fair dealing claims under J10007. Both parties acknowledge that when a district court grants summary judgment sua sponte to a non-moving party, as the court did here, the substance of the decision is reviewed de novo under the normal standards for summary judgment, while the procedural decision to enter summary judgment sua sponte is reviewed for abuse of discretion. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (citations omitted). A sua sponte grant of summary judgment is "disfavored." *Emp'rs Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). However, a district court does not abuse its discretion when the losing party is on notice that it must to come forward with all its evidence and has had a reasonable opportunity to respond to all the issues considered by the court. *Shelby Cnty.*, 203 F.3d at 931; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see also* Fed. R. Civ. P. 56(f).

Sumner's summary judgment motion requested declaratory judgment based on only the pleadings, the contracts, and the consulting agreement. In dismissing Sumner's claim, the district court acknowledged, "Armstrong Coal significantly reduced the volume of coal to be sold under Contract No. J07032 the same day it executed Contracts No[s]. J10007 and J10009." However, the court held that "this fact alone cannot support an entry of judgment, especially in light of facts to the contrary," noting that the price of coal per ton under J10007 was higher than the price under J07032

as an "example" of one such contrary fact. Based on this determination, the district court dismissed Sumner's claim for commissions under J10007.

The district court should not have dismissed Sumner's claim sua sponte before conducting discovery. A party who moves for summary judgment and represents that the pleadings and documents are sufficient to grant judgment in his favor is not on notice to put forth evidence to defend against summary judgment in favor of the non-moving party where no discovery has yet occurred. This is not a case where the court had the benefit of a "voluminous record" or "extensive discovery." *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 961 (6th Cir. 2007). Nor is this a case where "the record reflects the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." *Id.* (citation and internal quotation marks omitted). Rather, only the consulting agreement and the coal contracts were in the record at the time of the court's sua sponte ruling, none of which went to Armstrong's reasoning or intent in amending J07032 and executing J10007. Under the circumstances, the district court's procedure prevented Sumner from "com[ing] forward with all [his] evidence." *See Turcar, LLC v. I.R.S.*, 451 F. App'x, 509, 513 (6th Cir. 2011).

Moreover, Sumner was deprived of the opportunity to identify evidence through discovery in support of his claims. *See Excel Energy*, 246 F. App'x at 960 (a losing party must show that remanding the case would not "merely entail an empty formality with no appreciable possibility of altering the judgment"). "A losing party is prejudiced where the court's entry of summary judgment deprived it of its ability to develop the record or to present legal arguments that would disturb the prevailing party's entitlement to judgment as a matter of law." *Turcar*, 451 F. App'x at 515

(citations omitted); *see Smith v. Perkins*, 708 F.3d 821, 831 (6th Cir. 2013). Moreover, without the benefit of a more developed record, we are unable to conduct a meaningful review to determine whether there was a genuine issue of material fact as to Sumner's claim that Armstrong acted in bad faith. *See Chance v. Mahoning Cnty.*, 105 F. App'x 644, 649–50 (6th Cir. 2004). As we stated in *Wausau*:

> Courts of Appeal are courts of review. It would normally be impossible to determine whether there is a disputed issue of material fact when a party has not had the chance to develop the record below. This would force an appeals court to serve as a sounding board for facts not properly in the record, simply because a party never had a chance to develop them.

69 F.3d at 105. Accordingly, under the abuse of discretion standard, the district court erred in sua sponte granting summary judgment to Armstrong without the opportunity for discovery on Sumner's breach of good faith and fair dealing claim.

### III.

Based on the foregoing reasoning, we AFFIRM the grant of summary judgment to Sumner, and REVERSE and REMAND the grant of summary judgment to Armstrong.